UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **GARY CARTER # 514838,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 2:13-00019 |
| ) | Judge Sharp/Brown |
| **W. B. MELTON,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**To: The Honorable Kevin H. Sharp, United States District Judge.**

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that: **1)** defendants' motion for summary judgment (Doc. 103) be **GRANTED**; **2)** this case be **DISMISSED** with prejudice for failure to state a claim under 42 U.S.C. § 1983; **3)** dismissal of this action count as a "**STRIKE**" under 28 U.S.C. § 1915(g); **4)** the order accepting and adopting this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; **5)** any appeal **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3); **6)** any pending motions be **TERMINATED** as moot.

## I. STATEMENT OF THE CASE

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983 against the following defendants: W. B. Melton, Sheriff of Overton County; Shannon Harvey, Jail Administrator, Overton County Jail (OCJ); Corrections Officer (CO) Ethan Bean, Overton County Sheriff's Department (OCSD). Plaintiff was incarcerated in OCJ both at the time of the alleged events that gave rise to this action and when he filed his complaint.

Plaintiff is suing defendants in both their individual and official capacities. He seeks $5,000.00 in compensatory damages, responsibility for future medical expenses, unspecified

punitive damages, nominal damages in the amount of $1.00, and a permanent injunction requiring that OCSD officers be trained properly in the use of force.[1] (Doc. 1, ¶¶ III.B.1-3, V) The statement of facts in the complaint is quoted below in relevant part:

> September 1, 2012, I Gary Carter, was being escorted from my cell 220 MAX, down stairs to the booking area of the jail by Corrections Officer Ethan Bean, when I cussed him for digging the handcuffs that was placed on me, in my back to the point of cutting, making scars. Ethan Bean then pulled down on the cuffs putting me in a squatting position, pulled back up and shoved me forward, making me airborn[e] down over half a flight of steps, landing on the bottom left handrail, on my neck. This caused numbness in my left hand, to date, and back pain in my lower to mid area of my spine. All this occur[r]ed in front of a camera at around 5:45 pm.
>
> I allege that this was use of excessive force on the part of Ethan Bean and that Shannon Harvey and W. B. Melton had prior knowledge that Ethan Bean has violent tendencies toward inmates that amounts to a violation of the Eighth Amendment to be free from cruel and unusual punishment. . . .

(Doc. 1, ¶ IV)(unnecessary/improper capitalization omitted)

The District Judge referred this case to the Magistrate Judge on April 8, 2013 to enter a scheduling order for the management of the case, to dispose or recommend the disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 723(b), Fed. R. Civ. P. and the Local Rules of Court. (Doc. 3, p. 3) The Magistrate Judge entered a scheduling order on May 8, 2013. (Doc. 12) This matter is set for trial on June 17, 2014. (Doc. 27)

Defendants filed a motion for summary judgment on February 10, 2014. (Doc. 103) Additional documents filed by defendants in support of their motion for summary judgment

---

[1] The record shows that plaintiff no longer is incarcerated at OCJ. (Docs. 101-02) Therefore, his demand for injunctive relief is moot. *See Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)(citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

included: 1) a memorandum in support of the motion for summary judgment (Doc. 104); 2) the declaration of CO Bean (Doc. 112); 3) defendants' statement of undisputed facts (Doc. 113); 4) a DVD of the alleged incident (Doc 118). Plaintiff filed a hand-annotated response to defendants' statement of undisputed facts. (Doc. 120) However, he did not file a response to defendants' motion for summary judgment, and the time for him to do so has now passed.

This matter is now properly before the court.

## II. STANDARD OF REVIEW

### A. Claims Under § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Santiago v. Ringle*, 734 F.3d 585, 589 (6th Cir. 2013). "Absent either element, a section 1983 claim will not lie." *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his constitutional rights. *Daniels*, 474 U.S. at 333-36; *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

Defendants are state actors for purposes of § 1983. The only remaining question under § 1983 is whether they violated plaintiff's rights under the Constitution or laws of the United States.

### B. Standard for Motion for Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P., *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *U.S. ex. Rel. Wall v. Circle C Const.*, L.L.C., 697 F.3d 345, 351 (6th Cir. 2012)(quoting *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). The moving party has the burden of showing the absence of genuine factual disputes. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *First Nat. Bank of Arizona v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). "A 'mere scintilla' of evidence, however, is not enough for the non-moving party to withstand summary judgment." *U.S. Ex. Rel. Wall*, 697 F.3d at 351)(quoting *La Quinta Corp. v. Heartland Prop.*, LLC, 603 F.3d 327, 335 (6th Cir. 2010)(citing *Ciminillo*, 434 F.3d at 464)).

### III. ANALYSIS

### A. Plaintiff's Claims

Plaintiff alleges that defendants violated his rights under the Eighth Amendment. He claims that CO Bean used excessive force against him, and that Sheriff Melton and Jail Administrator Shannon had prior knowledge of CO Bean's alleged "violent tendencies toward inmates." Whereas plaintiff's "excessive force" claim against CO Bean is clear on its face, the Magistrate Judge

4

liberally construes the complaint to allege an Eighth Amendment claim for "failure to protect" against Sheriff Melton and Jail Administrator Harvey.

## B. Defendants' Motion for Summary Judgment

Defendants advance several arguments in support of their motion for summary judgment. First, they argue that plaintiff failed to perfect his case against them in their official capacity. Second, they argue that Sheriff Melton and Jail Administrator Harvey are not liable under the doctrine of *respondeat superior* for the alleged actions of CO Bean. Third, they argue that the complaint should be dismissed against CO Bean because plaintiff cannot establish that CO Bean used excessive force proscribed by the Eighth Amendment, or that CO Bean's alleged actions were objectively unreasonable under the circumstances. Finally, defendants argue that the case should be dismissed because they are entitled to qualified immunity.

The Magistrate Judge notes here that alleged underlying constitutional violation stems from CO Bean's alleged use of excessive force. Plaintiff's claims against Sheriff Melton and Jail Administrator Harvey are derivative of that underlying claim. If it were shown that CO Bean's alleged actions did not violate the Eighth Amendment, then plaintiff would have no cause of action against Sheriff Melton and Jail Administrator in their supervisory capacities, and no further analysis would be required. That being the case, the Magistrate Judge turns his attention first to plaintiff's claim against CO Bean.

An Eighth Amendment excessive force claim has both a subjective and objective component. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). To determine whether the subjective component is met, the question is "'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Williams*

5

*v. Curtin*, 631 F.3d 380, 383 (6th Cir.2011)(quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Considerations relevant to this subjective component may include "'the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted.'" *Williams*, 631 F.3d at 383 (quoting *Whitley*, 475 U.S. 312, 321 (1986)). The objective component asks whether the pain inflicted was "sufficiently serious." *Williams*, 631 F.3d at 383 (citing *Wilson*, 501 U.S. at 298). The objective component is met when force is used maliciously and sadistically to cause harm whether or not significant injury is evident. *Williams*, 631 F.3d at 383 (citing *Wilson*, 501 U.S. at 289); *see also Wilkins*, 559 U.S. at 34.

The parties are in basic accord as to the events that immediately preceded the incident about which plaintiff complains. CO Bean entered plaintiff's cell "220 MAX" on September 1, 2012 to pick up plaintiff's food tray. (Doc. 120, ¶ 3, p. 2) When CO Bean opened plaintiff's cell door, plaintiff began yelling and threw his tray out of his cell onto the catwalk.[2] (Doc. 120, ¶¶ 4-5, pp. 2-3) CO Bean left plaintiff's cell, and returned "about five minutes later" with two other officers. (Docs. 105-1, p. 12; 120, ¶¶ 7-9, pp. 3-4) CO Bean handcuffed plaintiff, escorted him from his cell, and then he and plaintiff "started to go down the stairs" (Docs. 105-1, p. 13; 120, ¶¶ 9, 12, pp. 4-5).

As previously noted at p. 3, defendants have filed a DVD made from jail security camera footage of the incident that occurred on the stairs immediately after CO Bean removed plaintiff from his cell. (Doc. 118) The contents of that DVD are described below:

---

[2] At his September 11, 2013 deposition, plaintiff testified that he "threw [his] tray out . . . got mad, and was hollering." (Doc. 105-1, p. 12)

1. The DVD image is date stamped "SEP-01-2012" in the bottom left corner – the date of the incident – with an initial time reference of "17:51:55." The image shows a long staircase descending into an area below with 12 empty tables. The feet/legs of one or more individuals can be seen at the top of the staircase (upper right corner of image). (Doc. 118, 17:51:55 – 17:51:56)

2. Two figures descend the stairs, one in front wearing orange trousers and a white t-shirt (plaintiff), and a uniformed figure behind and one step above (CO Bean). Slightly less than half way down the stairs, plaintiff can be seen to straighten his left leg and lean back into CO Bean. (Doc. 118, 17:51:57)

3. Slightly more than halfway down the stair case, plaintiff pushes further back against CO Bean, his shoulders now at the approximate level of CO Bean's waist. One step further down, plaintiff can be seen to plant both feet on a single stair and push further back causing CO Bean to bend down and forward at the waist. (Doc. 118; 17:51:58)

4. Both feet still planted on the one step, plaintiff continues to push back into CO Bean causing them both to fall backwards on the stairs. Plaintiff lands across CO Bean's legs and to his right. (Doc. 118, 17:51:59 – 17:52:00)

5. CO Bean quickly regains his feet with plaintiff still on his back on the stairs. CO Bean pulls plaintiff to his feet, at which time both men lose their balance and begin to stumble together down the stairs, plaintiff in front with CO Bean behind holding on to him with his right hand. (Doc. 118, 17:52:01)

6. With plaintiff now several steps ahead, and CO Bean still holding on to plaintiff with his right hand, CO Bean grabs the hand rail with his left hand to stop their fall as the two men continue to stumble down the stairs. CO Bean, still holding on the handrail with his left hand, and to plaintiff with his right, stops their fall several steps short of the bottom. (Doc. 118, 17:52:02)

7. CO Bean escorts plaintiff down the last few stairs without repercussion or further incident, during which time plaintiff looks back over his left shoulder at someone or something out of the view of the camera. (Doc. 118, 17:52:03 – 17:52:05)

CO Bean made the following statements in his sworn declaration relevant to the incident described above:

1. "As I proceeded down the stairs . . . [plaintiff] . . . began to lean back with his torso pushing against me and resisting . . . he then appeared to lose his balance and sat on the step which caused me to also lose my balance . . . so

7

I eased down as well." (Doc. 112, ¶ 6, p. 2)  CO Bean's statement is supported by the DVD. (Doc. 118, 17:51:57 – 17:52:00)

   2. "I tried to help [plaintiff] stand, but as he got up, both [he] and I lost our balance and fell down the stairs. I attempted to stop [plaintiff's] fall by keeping my hand on him at all times . . . ." (Doc. 112, ¶ 7, p. 2)  CO Bean's statement is supported by the DVD. (Doc. 118, 17:52:01– 17:52:02)

   3. "Mr. Carter immediately began yelling to the other inmates that I was throwing him around and he was going to have my job and sue me." (Doc. 112, ¶ 8, p. 1)  CO Bean's statement is supported by the DVD to the extent that plaintiff can be seen looking over his shoulder to an area beyond the view of the camera. (Doc. 118, 17:52:03 – 17:52:05)

Plaintiff made the following unsworn, unsigned hand written annotations to defendants's statement of undisputed facts[3] relevant to the incident described above:[4]

   1. Plaintiff disputes defendants' statement that plaintiff "began to lean back with his torso pushing against Bean and resisting." (Doc. 120, ¶ 13, p. 5)  Plaintiff contends that "he was pulled down by the handcuffs into a squatting position . . . ." (Doc. 120, ¶ 13, p. 5)  Plaintiff's statement that he was pulled by CO Bean into a squatting position, by the handcuffs or otherwise, is not supported by the DVD. (Doc. 118, 17:51:57 – 17:52:00)

   2. Plaintiff disputes defendants' statement that he "then appeared to lose his balance and sat on the step which caused Bean to also lose his balance slightly, so he eased down onto the step as well." (Doc. 120, ¶ 14, p. 5)  Plaintiff argues again that CO Bean pulled him down. (Doc. 120, ¶ 14, p. 5)  Plaintiff's statement that CO Bean pulled him down is not supported by the DVD. (Doc. 118, 17:51:57 – 17:52:00)

---

[3] Apart from his unsworn, unsigned annotations to defendants' statement of undisputed material facts, plaintiff has made no effort to provide any evidence in response to defendants' motion for summary judgement. Before his transfer from OCJ, plaintiff could have provided an affidavit from any of his fellow prisoners regarding the events when CO Bean removed him from his cell. He did not. Before his transfer, plaintiff could have provided at least one affidavit from anyone in "whole MAX population" who "witnessed" the incident on the stairs. He did not. In the event that plaintiff were unable to provide affidavits from his fellow prisoners before his transfer, he could have provided the names of those inmates who witnessed the events of December 1, 2012 just as he provided the names of inmates Ricky Paul and Randy Caldwell in support of his allegation that Sheriff Melton and Jail Administrator Harvey were aware CO Bean's prior use of excessive force (Doc. 120, ¶ 27, p. 9). Again, he did not.

[4] Unnecessary/improper capitalization has been omitted from plaintiff's annotations.

3. Plaintiff disputes defendants' statement that, "[i]n an effort to aid [plaintiff] up, Bean tried to help him stand, but as he got up, both [plaintiff] and Bean lost their balance and fell down the stairs." (Doc. 120, ¶ 15, p. 6) Plaintiff contends that CO Bean "never fell or lost his balance." (Doc. 120, ¶ 15, p. 6) Plaintiff's statement that CO Bean "never fell or lost his balance" is not supported by the DVD. (Doc. 118, 17:52:01 – 17:52:02)

4. Plaintiff does not dispute defendants' statement that CO Bean "attempted to stop [plaintiff's] fall by keeping [his] hand on [plaintiff] at all times." (Doc. 120, ¶ 16, p. 6) Plaintiff asserts, however, that CO Bean kept hold of his handcuffs for benefit of the security camera. (Doc. 120, ¶ 26, p. 6) Assuming for the sake of argument that a reasonable jury would conclude that CO Bean was concerned enough about the security camera to hold on to plaintiff as they fell, that same reasonable jury likely would ask, if CO Bean were that concerned about the security camera, why would he intentionally create the incident on the stairs in full view of that same security camera?

5. Plaintiff disputes defendants' statement that CO Bean did not "throw [him] down the stairs or intend for him to fall." (Doc. 120, ¶ 17, p. 6) Again, the DVD does not support plaintiff's accusation that CO Bean threw him down the stairs intending that he fall. The DVD shows that both men lost their balance when CO Bean pulled plaintiff to his feet, and that CO Bean tried to keep plaintiff from falling by holding onto him as they stumbled down the stairs together. (Doc. 118, 17:52:01 –17:52:02)

6. Plaintiff disputes defendants' statement that he "immediately began yelling to the other inmates that Bean was throwing him around and he was going to have his job and sue him." (Doc. 120, ¶ 18, p. 6) As previously noted, the DVD shows plaintiff looking back over his left shoulder as he and CO Bean descend the last few steps to the floor below. (Doc. 118, 17:52:03 – 17:52:05) Moreover, in annotating defendants' statement of undisputed material facts, plaintiff writes: "The plaintiff asserts that he witnessed almost the whole MAX population seen the incident and stated, Y'all seen that didn't y'all? Then stated that he would sue or have his job taken." (Doc. 120, ¶ 18, p. 6) Plaintiff's statement appears to confirm the very statement that he disputes.

The Magistrate Judge will not speculate as to what a reasonable jury might or might not conclude regarding whether the incident in plaintiff's cell spilled over onto the stairs a few minutes later. On the other hand, the Magistrate Judge finds the DVD compelling as to the incident on the stairs. The DVD shows that plaintiff initiated the incident on the stairs when he resisted CO Bean's

efforts to escort him to intake. Moreover, the DVD shows that CO Bean did not act maliciously and sadistically for the purpose of causing harm to plaintiff, but that he acted in a good faith effort to restore discipline when plaintiff resisted and to keep plaintiff from injuring himself under very dangerous circumstances.[5] In short, the DVD supports the conclusion that CO Bean's conduct fails to satisfy the subjective component of the two-part test required to establish the use of excessive force in violation of the Eighth Amendment. Because plaintiff cannot establish the subjective component of the two-part test in view of the DVD, it is not necessary to address the objective component.

## IV. CONCLUSION

Plaintiff's excessive force claim against CO Bean is subject to dismissal for failure to state a claim on which relief may be granted. Because plaintiff's claims Sheriff Melton and Jail Administrator Harvey are derivative of his claims against CO Bean, plaintiff's claims against them are subject to dismissal for failure to state a claim as well. With plaintiff's claims against all defendants subject to dismissal for failure to state a claim, defendants' motion for summary judgement should be granted.

## V. RECOMMENDATION

For the reasons explained above, the Magistrate Judge recommends that: **1)** defendants' motion for summary judgment (Doc. 103) be **GRANTED**; **2)** this case be **DISMISSED** with prejudice for failure to state a claim under 42 U.S.C. § 1983; **3)** dismissal of this action count as a "**STRIKE**" under 28 U.S.C. § 1915(g); **4)** the order accepting and adopting this R&R constitute the **FINAL JUDGMENT** in this action; **5)** any appeal **NOT** be certified as taken in good faith under

---

[5] The total time lapsed of the incident on the stairs was approximately seven seconds.

28 U.S.C. § 1915(a)(3); **6)** any pending motions be **TERMINATED** as moot.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 30th day of April, 2014.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge